IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GSR Markets Limited,

        Plaintiff,

v.

Diana McDonald, et al.,

        Defendants.

Case No. 1:19-cv-1005-MLB

_____/

**OPINION & ORDER**

Plaintiff GSR Markets Limited moves for default judgment against Defendants Valkyrie Group, LLC ("Valkyrie Group"), Hugh Austin, and Brandon Austin (the "Valkyrie Defendants") on its claims of fraud, conspiracy to commit fraud, conversion, unjust enrichment, and attorneys' fees. (Dkt. 264.) The Court grants in part and denies in part that motion.

**I.   Background**

On January 1, 2019, Austin Yarvorsky of OTC Desks Ltd., LLC ("OTC Desks") contacted Plaintiff, a digital asset trading company, about purchasing Bitcoin from Alivic Corporation Pty, Ltd. ("Alivic"). (Dkt. 76

¶ 13.) While Alivic was the ultimate seller, the Valkyrie Defendants were supposed to broker the deal and signed the contract as "Sellers." (*Id.*) The parties designated Defendant Diana McDonald as the escrow agent. (*Id.* ¶ 20.) OTC Desks represented to Plaintiff it had previously done business with the Valkyrie Defendants and McDonald. (*Id.* ¶ 14.)

During the January 1 call, Plaintiff and OTC Desks discussed a potential $70,000,000 transaction for the purchase of Bitcoin in two tranches, and the opportunity for Plaintiff to acquire Bitcoin from the Valkyrie Defendants in the future. (*Id.* ¶ 15.) Based on the call, Plaintiff sent a letter of intent, indicating it intended to purchase Bitcoin after conducting a test purchase and that Plaintiff had the requisite funds. (*Id.* ¶ 16.) The next day, OTC Desks responded to the letter reiterating the parties' intent to enter into an agreement. (*Id.*)

Based on the Valkyrie Defendants' representations they would transfer the Bitcoin, on January 3, Plaintiff, OTC Desks, and Valkyrie Group entered into an agreement. (*Id.* ¶ 17.) Under the agreement, Plaintiff would wire the agreed-upon amount into McDonald's escrow account. (*Id.* ¶ 20.) Upon confirmation of the funds being deposited, Valkyrie Group was to initiate the placement of the first tranche of

Bitcoin into the buyer's wallet. (*Id.* ¶ 22.) Payment was to be released to the Valkyrie Defendants' bank account upon delivery of the Bitcoin. (*Id.* ¶ 23.)

On January 3, Plaintiff wired $4,000,000 into McDonald's account. (*Id.* ¶ 25.) Because of the agreement, Plaintiff shorted 1,000 Bitcoin based on a purchase price of $3,635 per Bitcoin. (*Id.* ¶ 26.) The Valkyrie Defendants, however, never transferred any Bitcoin to Plaintiff. Nor did the Valkyrie Defendants ever intend to transfer any Bitcoin to Plaintiff.

When Plaintiff received no Bitcoin, it immediately began calling and messaging the Valkyrie Defendants. Starting on January 3 and continuing through February 4, Plaintiff and Mr. Yavorsky exchanged numerous text messages regarding the status of the Bitcoin. (*Id.* ¶ 29.) The messages show that while Mr. Yavorsky claimed his main priority was making sure the funds were returned, he repeatedly evaded Plaintiff's questions on the status of the Bitcoin and Plaintiff's $4,000,000. (*Id.* ¶ 30.)

On January 7, Plaintiff notified the Valkyrie Defendants and Mr. Yavorsky of Plaintiff's increasing damages. (*Id.* ¶ 31.) In addition to the $4,000,000, Plaintiff had to unwind its shorting of Bitcoin, losing at least

3

$200,000. (*Id.*) Plaintiff demanded a full refund by close of business. (*Id.*)

On January 18, Plaintiff received $2,000,000 via wire from the escrow account. (*Id.* ¶ 38.) On March 1, 2019, Plaintiff sued the Valkyrie Defendants. (Dkt. 1.) After this lawsuit was filed, McDonald agreed to return the balances of two of her IOLTA accounts to Plaintiff, totaling $330,075.06. (Dkt. 76 ¶ 103.) Pursuant to the Court's March 9 order, $105,080.71, plus $2,081.99 in interest, was disbursed to Plaintiff from the Court's registry. (Dkt. 150.) Plaintiff is still owed $1,669,924.94 and the $200,000 it lost shorting the Bitcoin it never received. (Dkt. 76 ¶ 107.)

The Valkyrie Defendants were served on March 27, 2019. (Dkts. 62; 63; 64.) The clerk entered default on September 25, 2020. Plaintiff now moves for default judgment on its claims of fraud, conspiracy to commit fraud, conversion, unjust enrichment, and attorneys' fees. (Dkt. 264.) Plaintiff moves only for compensatory damages, which it claims to be $1,562,762.24, and attorneys' fees. (*Id.* at 2.)

## II.  Standard of Review

If a defendant fails to plead or otherwise defend a lawsuit within the time required by the Federal Rules of Civil Procedure and the plaintiff moves for default, the clerk must enter default. Fed. R. Civ. P. 55(a).  Default constitutes admission of all well-pleaded factual allegations in the complaint but not an admission of facts incompletely pleaded or conclusions of law. *See Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005).

After the clerk enters default, the "entry of a default judgment is committed to the discretion of the district court." *See Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1576 (11th Cir. 1985).  Because of the "strong policy of determining cases on their merits," the Eleventh Circuit has cautioned that "default judgments are generally disfavored" and not granted as a matter of right.  *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244–45 (11th Cir. 2015).  A court enters default judgment only "when there is 'a sufficient basis in the pleadings for the judgment entered.'" *Id.* at 1245 (citing *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

The standard for determining the sufficiency of the basis for the judgment is "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Id.* A motion for default judgment is conceptually like a reverse motion to dismiss for failure to state a claim. *Id.* "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). So, in considering a motion for default judgment, a court accepts all well-pleaded facts as true and determines whether those facts state a claim for relief that is plausible— that is, whether the plaintiff's allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Singleton v. Dean*, 611 F. App'x 671, 671 (11th Cir. 2015) (per curiam).

And when assessing default judgment damages, the court has "an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). Courts may enter such awards without holding an evidentiary hearing, but only if "the amount claimed is a liquidated sum

6

or one capable of mathematical calculation." *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1543–44 (11th Cir. 1985).

### III. Discussion

#### A. Fraud

To state a claim for fraud under Georgia law, a plaintiff must establish (1) a false representation by a defendant; (2) scienter (defendant's knowledge that the information is false); (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by plaintiff; and (5) damage to plaintiff. *See Engelman v. Kessler*, 797 S.E.2d 160, 166 (Ga. Ct. App. 2017). "[T]he alleged misrepresentations must be not only material but also actionable; otherwise, a party is not justified in relying upon them." *Shea v. Best Buy Homes, LLC*, 533 F. Supp. 3d 1321, 1337 (N.D. Ga. 2021). "[T]o be actionable, [a misrepresentation] must relate to an existing fact or past event. Fraud cannot consist of mere broken promises, unfilled predictions or erroneous conjecture as to future events." *Fuller v. Perry*, 476 S.E.2d 793, 796 (Ga. Ct. App. 1996). A "fact is material if its existence or nonexistence is a matter to which a reasonable man [or woman] would attach importance in determining his

[or her] choice or action in the transaction in question." *Greenwald v. Odom*, 723 S.E.2d 305, 315 (Ga. Ct. App. 2012).

Plaintiff claims the Valkyrie Defendants promised they would transfer Bitcoin in exchange for $4 million. (Dkt. 76 ¶ 122.) The Valkyrie Defendants made the representation. (*Id.* ¶ 124.) Plaintiff contends the Valkyrie Defendants never planned to transfer any Bitcoin to Plaintiff. (*Id.*) Plaintiff, however, relied upon the representation, entered into an agreement, and wired $4 million. (*Id.* ¶ 125.) The Valkyrie Defendants assured Plaintiff the Bitcoin was forthcoming, but Plaintiff never received any such Bitcoin. (*Id.* ¶¶ 57–129.) Plaintiff claims the Valkyrie Defendants' statements were made to induce Plaintiff to wire $4 million, the representations were knowingly false, Plaintiff "justifiably relied" on the Valkyrie Defendants' statements, and Plaintiff "has been damaged." (*Id.* ¶¶ 122, 124–25, 132–33.) Plaintiff is thus entitled to default judgment on its fraud claim.

After reviewing Plaintiff's complaint and attachments, as well as its motion for default judgment and attachment, the Court finds the information provided sufficient to determine damages. On January 3, 2019, Plaintiff wired $4,000,000. (Dkt. 76 ¶ 24.) But $2,437,237.76 was

returned. (Dkts. 76 ¶¶ 38, 103; 150.) Of the $4,000,000 initially sent by Plaintiff, $1,562,762.24 is still outstanding. Plaintiff is thus entitled to $1,562,762.24.

> **B. Conspiracy to Commit Fraud**

Plaintiff alleges the Valkyrie Defendants conspired to commit the fraud described above. (Dkt. 76 ¶¶ 181–83.) "To recover damages based on a civil conspiracy, a plaintiff must show that two or more persons combined . . . to do some act which is a tort." *McIntee v. Deramus*, 722 S.E.2d 377, 379 (Ga. Ct. App. 2012). The "essential element of [an] alleged conspiracy is proof of a common design establishing that two or more persons in any manner, either positively or tacitly, arrive at a mutual understanding as to how they will accomplish an unlawful design." *Id.* Plaintiff's allegations are, however, entirely conclusory and insufficient to prove a claim for conspiracy. The complaint simply states McDonald, McDonald Law, and the Valkyrie Defendants conspired with each other and on behalf of each other to commit fraud against Plaintiff. (Dkt. 76 ¶ 182.) While Plaintiff sufficiently proved its fraud claim, it merely recites the elements of a claim for conspiracy which is insufficient to state a claim. *Ashcroft v. Iqbal*, 129 S.Ct 1937, 1949 (2009)

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Court thus declines to grant default judgment on this count.

### C. Conversion

To bring a conversion claim, a plaintiff must show "(1) title to the property or right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property." *Trey Inman & Assoc. v. Bank of Am.*, 702 S.E.2d 711, 716 (Ga. Ct. App. 2010). Plaintiff alleges the Valkyrie Defendants, McDonald, and McDonald Law acquired $4,000,000 by virtue of Plaintiff's transfer of those funds into the escrow account. (Dkt. 76 ¶ 185.) The escrow account, however, is McDonald Law's IOLTA account at Wells Fargo. (*Id.* ¶ 20.) There is no indication the Valkyrie Defendants have any ownership or possession over the escrow account. And there is no allegation any funds were transferred from the escrow account to the Valkyrie Defendants.[1] (*See* Dkt. 76 ¶ 64.) The Court thus declines to grant default judgment on this count.

---

[1] The Court acknowledges Plaintiff alleges payment was to be released to the Valkyrie Defendants' bank account upon delivery of the Bitcoin, but

**D.     Unjust Enrichment**

In the absence of an enforceable contract, a plaintiff may recover, under a claim for unjust enrichment, a benefit conferred on the defendant for which the plaintiff did not receive a corresponding return. *Ga. Tile Distribs., Inc. v. Zumpano Enters., Inc.*, 422 S.E.2d 906, 908 (Ga. Ct. App. 1992). To state a claim for unjust enrichment a plaintiff must "show that (1) a benefit was provided, (2) compensation for that benefit was not received, and (3) the failure to compensate renders the transaction unjust." *Ralls Corp. v. Huerfano River Wind, LLC*, 27 F. Supp. 3d 1303, 1329 (N.D. Ga. 2014); *Found. for Lost Boys v. Alcon Entertainment, LLC*, No. 1:15-CV-00509, 2016 WL 4394486, at *10 (N.D. Ga. March 22, 2016). Plaintiff alleges McDonald, McDonald Law, and the Valkyrie Defendants personally profited from their fraudulent scheme. (Dkt. 76 ¶ 213.) Plaintiff claims by fraudulently inducing it to enter into an agreement, McDonald, McDonald Law, and the Valkyrie Defendants received, and still enjoy the benefit of, $4,000,000 while Plaintiff has lost at least $1,669.924.24. (*Id.* ¶¶ 214–15.) McDonald, McDonald Law, and the

---

the Bitcoin was never delivered and there is no allegation payment was released. (Dkt. 76 ¶ 23.)

Valkyrie Defendants also still maintain the Bitcoin which should have been transferred to Plaintiff. (*Id.* ¶ 215.) Plaintiff claims it is entitled to have a constructive trust imposed upon all the funds McDonald, McDonald Law, and the Valkyrie Defendants received in connection with the agreement. (*Id.* ¶ 217.) The Court disagrees.

First, a claim for unjust enrichment only arises "where a benefit has been conferred upon the party sought to be held liable for the value." *Yoh v. Daniel*, 497 S.E.2d 392, 294 (Ga. Ct. App. 1998). As discussed above, there is no allegation the Valkyrie Defendants received any of the funds placed into escrow by Plaintiff. Second, Plaintiff entered into a Private Deed of Agreement for Bitcoin Asset Exchange/Transaction with OTC Desks and Valkyrie. (*Id.* ¶ 17.) But "[r]ecovery under [the theory of unjust enrichment] presupposes the absence of a contractual agreement." *Fed. Ins. Co. v. Westside Supply Co.*, 590 S.E.2d 224, 232 (Ga. Ct. App. 2003). Plaintiff cannot bring an unjust enrichment claim against Valkyrie. The Court thus declines to grant default judgment on this count.

### E. Attorneys' Fees

Plaintiff next seeks $174,679.31 in attorneys' fees and submits the affidavit of its attorney, Richard Robbins, to support this amount. (Dkts. 264 at 13; 264-1.) Under Georgia law, a plaintiff can recover attorneys' fees "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." O.C.G.A. § 13-6-11. Though typically a question for the jury, a court can award attorneys' fees at the default judgment stage. *Pure Hosp. Sols., Inc. v. Canouse*, 820 S.E.2d 434, 438 (Ga. Ct. App. 2018).

Bad faith is not the "'mere refusal to pay a just debt'" or an "'honest mistake,'" but is an action done "'by some interested or sinister motive.'" *Bowen v. Laird*, 821 S.E.2d 105, 109 (Ga. Ct. App. 2018) (quoting *Associated Software Consultants Org. v. Wysocki*, 338 S.E.2d 679, 681 (Ga. Ct. App. 1985)). The Court finds the Valkyrie Defendants had "a sinister motive" and "dishonest purpose" when they contracted to transfer $4,000,000 worth of Bitcoin with the intention of never transferring any Bitcoin.

Mr. Robbins's affidavit, however, falls short of establishing the reasonableness of the fees. Mr. Robbins testified that the fees incurred

13

are based on the Robbins Firm's standard hourly rates, which range from $300 to $695 per hour. (Dkt. 264-1 ¶ 10.) The hourly rates are based, in part, on an attorney's level of experience and the type of legal work involved. (*Id.* ¶ 11.) Mr. Robbins testified that for the period from January 29, 2019 through May 26, 2022, the Robbins Firm billed $174,679.31 in attorneys' fees to Plaintiff. (*Id.* ¶ 12.) Mr. Robbins also summarily testified that all the legal services and fees have been customary and necessarily incurred by Plaintiff. (*Id.* ¶¶ 13–14.) He also notes the fees are the kind reasonably and customarily charged to and paid by parties in a case like this and are substantially similar to fees that other attorneys in Georgia charge and collect. (*Id.* ¶ 13.) This is not enough. Neither Plaintiff nor Mr. Robbins indicate how much time was billed or what specific services were provided. They also fail to attach any billing statements.

## IV. Conclusion

The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Default Judgment. (Dkt. 264.) The Court **GRANTS** the motion for Plaintiff's fraud claim, but **DENIES** the motion for its conspiracy, conversion, and unjust enrichment claims. The Court

**AWARDS** Plaintiff $1,562,762.24 in damages against the Valkyrie Defendants.

The Court **DIRECTS** Plaintiff to submit clear and detailed evidence in support of its request for attorneys' fees within fourteen (14) days from the date of this Order.  After the Court addresses the issue of attorneys' fees and costs, the Court will direct the Clerk to enter default judgment against the Valkyrie Defendants.

**SO ORDERED** this 21st day of October, 2022.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE